**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

PATRICIA CONTRERAS,                                        No. 1:19-cv-12870

Plaintiff,

v.

UNITED STATES OF AMERICA,                           **OPINION**

Defendant.

<u>**APPEARANCES**</u>:

Gary B. Cutler
LAW OFFICES OF RICHARD A. STOLOFF
1500 JFK Boulevard
Suite 520
Philadelphia, PA 19102

Richard A. Stoloff
LAW OFFICES OF RICHARD A. STOLOFF
605 New Road
Linwood, NJ 08221

*On behalf of Plaintiff.*

Elizabeth Pascal
Angela Juneau
Jessica Rose O'Neill
U.S. DEPARTMENT OF JUSTICE
    OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

        *On behalf of Defendant.*

**O'HEARN, District Judge.**

**INTRODUCTION**

This matter comes before the Court on a Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56 by Defendant, United States of America ("USA"). (ECF No. 40). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Defendant's Motion is **GRANTED**.

## I.   BACKGROUND

Local Civil Rule 56.1(a) provides in relevant part,

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed. **The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion . . .** (emphasis added).

In support of its Motion, Defendant USA submitted a Statement of Material Facts ("SMF") as required by Local Civil Rule 56.1. (ECF No. 40-3). The SMF sets forth thirty-three allegedly undisputed facts. (ECF. No. 40-3.). Plaintiff submitted an Opposition Brief but failed to submit a "responsive statement of material facts addressing each paragraph" of Defendant USA's SMF as required by Local Civil Rule 56.1. (ECF No. 44). Therefore, pursuant to Local Civil Rule 56.1, each of the thirty-three facts set forth in the SMF from the USA will be deemed admitted and undisputed for purposes of this Motion. Thus, the Court will set forth the factual background based upon the SMF submitted by the Defendant.

2

On May 12, 2016, Plaintiff and her husband, Carlos Contreras, were driving in Mays Landing, New Jersey, when their vehicle collided with a United States Postal Service ("USPS") truck. (ECF No. 40-3, SMF No. 1)[1]. Plaintiff was a passenger in the car; Carlos Contreras was driving.  (SMF No. 2).

Plaintiff is not a native English speaker, but she understands a little English. (SMF No. 3). Plaintiff was deposed on December 19, 2019; she had a Spanish interpreter present for her deposition. (SMF No. 4). Carlos Contreras was deposed on January 27, 2020; he did not have an interpreter present for his deposition. (SMF No. 5). Plaintiff testified that her husband speaks better English than her, and that their children go to him for help with homework assignments in English. (SMF No. 6).  When she needs to write something in English, Carlos Contreras writes for her. (SMF No. 7).

After the motor vehicle accident, Carlos Contreras contacted the USPS to obtain reimbursement for damage to the vehicle. (SMF No. 8).  In response, on June 28, 2016, USPS sent Carlos Contreras two SF-95s and a letter, written in both English and Spanish, explaining how to fill out the forms. (SMF No. 9).  The June 28 Letter stated, in part and in both English and Spanish, that "[i]n order for your claim to receive proper consideration, it is requested that you supply all material facts on these forms, as they will be the basis for further action on your claim." (SMF No. 10).  Carlos Contreras testified that his capacity to read and write in English is "good." (SMF No. 11). Carlos Contreras filled out the Spanish version of the SF-95, using both English and Spanish, on July 1, 2016, and returned it to USPS. (SMF No. 12). The 2016 SF-95 lists Patricia Contreras as the claimant. (SMF No. 13). Carlos Contreras testified that he wrote her name because the

---

[1] Each citation hereafter will refer to the Defendant's SMF set forth in ECF No. 40-3. The Court does not repeat herein the citations to the record contained in Defendant's SMF but incorporates them by reference.

vehicle was in her name only. (SMF No. 14). The 2016 SF-95 also set forth the date of the motor vehicle crash, May 12, 2016, and states in box 8, which asks for the basis of the claim, that there was "damage to the left side of my car, dent on the door and the bottom of the car door." (SMF No. 15)[2]. In box 12a, which asks for the amount of property damage claimed, Carlos Contreras wrote, "6,872.59"; in box 12b, which asks for the amount of personal injury money being claimed, Carlos Contreras wrote, "none"; in box 12c, which asks for the amount of wrongful death money being claimed, Carlos Contreras wrote, "none"; and in box 12d, which asks for the total amount of money being claimed, Carlos Contreras wrote, "6,872.59." (SMF No. 16). Page 2 of the 2016 SF-95 has a statement in Spanish that translates to, "If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form." (SMF No. 17).  Carlos Contreras testified that a translation of the paragraph in Spanish was if a person "have the intention to present claimant for injuries and other materials, the claim for both concepts must appear in space 12 of the formula." (SMF No. 18).  Below box 12, the 2016 SF-95 has a statement in Spanish that translates to, "I certify that the amount of claim covers only damages and injuries caused by the incident above and agree to accept said amount in full satisfaction and final settlement of this claim." (SMF No. 19).  In box 13a, which asks for the signature of the claimant, Carlos Contreras signed "Patricia Contreras." (SMF No. 20).

Plaintiff testified that after the accident, her "husband made a few phone calls in reference to the car." (SMF No. 21). Carlos Contreras testified that after the accident, he told Plaintiff that "we were getting a form, that we had to fill it out, and as soon as I got the form, I fill it out and I send it." (SMF No. 22). When asked why Carlos Contreras would fill out the SF-95 in her name,

---

[2]  The 2016 SF-95 was submitted using the Spanish version of the form. An identical version in English can be found at https://www.gsa.gov/forms-library/claim-damage-injury-or-death ("English SF-95") (last visited Mar. 30, 2022).

Plaintiff testified, "[h]e was the one dealing with everything. It was the Postal Service in English, so he took charge of the paperwork and the documents." (SMF No. 23). She also confirmed that Carlos Contreras told her that he had to fill out a document in regard to the accident. (SMF No. 24).

On July 18, 2016, USPS sent a letter addressed to "Mr. and Mrs. Contreras" acknowledging receipt of their claim regarding the May 12, 2016, accident, and it enclosed a settlement check in the amount of $6,872.59, which was the full amount of the claim submitted, made out to Patricia Contreras. (SMF No. 25). The July 18, 2016, letter stated as follows: "Pursuant to 28 U.S.C. § 2672 and 39 C.F.R. § 912.14, acceptance of the check operates as a complete release and bars recovery of any additional or future claims against the United States Postal Service and any employee of the government whose act or omission gave rise to the claim by reason of the same subject matter. Any subrogation claims, liens, or outstanding indebtedness resulting from this accident must be satisfied from the proceeds of this check." (SMF No. 26). Carlos Contreras testified that he received the July 18, 2016, letter and check in the mail. (SMF No. 27). When asked if he understood the July 18, 2016, letter, he said, "[n]ot much, because there's a few words that I need to be sure. I'm not sure what they really mean." (SMF No. 28). He also testified that he did not understand "very well" what the letter meant when it said that acceptance of the check would operate as a complete release and bar recovery of future claims. (SMF No. 29). Plaintiff testified that she remembered Carlos Contreras showing her the check that they received from the USPS "for the car that we had lost." (SMF No. 30). Plaintiff and Carlos Contreras used the money from the USPS to buy another car. (SMF No. 31).

After cashing the settlement check for the full amount of the claim submitted, Plaintiff filed a second SF-95 on March 8, 2018, claiming personal injury. (SMF No. 32). Plaintiff's 2018 SF-

95 was denied on December 21, 2018, because Plaintiff's cashing of the 2016 settlement check "constitutes a full accord and satisfaction of any and all claims arising from the incident and therefore bars consideration of any further claims on her behalf." (SMF No. 33).

## II.   PROCEDURAL HISTORY

Plaintiff's Complaint was filed on May 23, 2019. (ECF No. 1). At the completion of discovery, the Defendant filed its Motion on November 5, 2021. (ECF No. 40).  On December 22, 2021, Plaintiff filed a Brief in Opposition, (ECF No. 44), and on January 11, 2022, the USA filed its Reply Brief, (ECF No. 45).

This Court has jurisdiction pursuant to 28 U.S.C. § 1346.

## III.   LEGAL STANDARD

### A.  Summary Judgment Pursuant to Fed. R. Civ. P. 56

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. U.S.*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty.*

6

*of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citation and internal quotations omitted).

**B. Motion to Dismiss for Lack of Subjection Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)**

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *CNA v. U.S.*, 535 F.3d 132, 139 (3d Cir. 2008) (quoting *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). Submitting a signed declaration or otherwise presenting competing jurisdictional facts presents a factual challenge. *Davis*, 824 F.3d at 346. When a party presents a factual challenge to the Court's jurisdiction, a court is not limited to the pleadings in resolving the challenge. *See U.S. ex rel. Customs Fraud Investigations , LLC. v. Victaulic Co.*, 839 F.3d 281, 251 (3d Cir. 2002) ("When a Rule 12(b)(1) motion is evaluated as a 'factual attack' on the Court's subject matter jurisdiction, the court may consider evidence outside the pleadings in evaluating that attack.").  A court can address claims of lack of subject matter jurisdiction at any time during the litigation. Fed. R. Civ. P. 12(h)(3).

Here, Defendant's motion for summary judgment and/or for dismissal under Fed. R. Civ. P. 12(h) is deemed a factual attack on the Court's subject matter jurisdiction. *See Medina v. City of Phila.,* 219 Fed.Appx. 169, 172 (3d Cir. 2007) (finding that defendant's motion to dismiss, which was based on plaintiff's failure to exhaust administrative remedies under the Federal Tort Claims Act ("FTCA"), was a factual attack on the district court's subject matter jurisdiction).

IV.   **DISCUSSION**

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's claims of personal injury in this case pursuant to 28 U.S.C. § 2672 and 39 C.F.R. § 912.14 because she accepted a settlement payment for property damage suffered in the car accident. In her Opposition Brief, Plaintiff alleges that her personal injuries did not exist when the SF-95 was executed, that the SF-95 was executed by her husband without her knowledge, and that the SF-95 was only intended to claim property damage and not release any claim for personal injury. (ECF No. 44 at 3). [3] Further, even though Plaintiff failed to respond to Defendant's SMF and failed to set forth her own SMF, Plaintiff argues that there are factual issues which preclude summary judgment "specifically whether under these factual circumstances, Patricia Contreras knowingly and with intent . . . waive[d] any future personal injury claims of which she was not aware at the time the property damage claim was submitted." (ECF No. 44 at 3).

The United States is immune from suit unless Congress unequivocally waives sovereign immunity. *U.S. v. Mitchell*, 445 U.S. 535, 538 (1980). A Court in this District previously explained,

> The [Federal Tort Claims Act] waives sovereign immunity for claims against the United States seeking monetary damages where the injury results from a 'negligent ... act ... of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant.'

*White-Squire v. U.S. Postal Serv.*, No. 08-3486, 2009 WL 313338, at *4 (D.N.J. Feb. 6, 2009) (quoting 28 U.S.C. § 1346(b)(1)); *see also Orozco-Barajas v. Zickefoose*, No. 11-3628, 2013 WL 2096501, at *10 (D.N.J. May 14, 2013).

---

[3] Plaintiff's Brief does not contain page numbers. Thus, the Court refers to the pagination set forth by ECF.

28 U.S.C. § 2672 provides in relevant part,

The head of each Federal agency or his designee, in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment . . .

Subject to the provisions of this title relating to civil actions on tort claims against the United States, any such award, compromise, settlement, or determination shall be final and conclusive on all officers of the Government, except when procured by means of fraud.

The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter.

39 C.F.R. § 912.14 provides in relevant part,

Payment by the Postal Service of the full amount claimed, or acceptance by the claimant, his agent, or legal representative, of any award, compromise, or settlement made pursuant to the provisions of the Federal Tort Claims Act, shall be final and conclusive on the claimant, his agent, or legal representative, and any other person on whose behalf or for whose benefit the claim has been presented, and shall constitute a complete release of any claim against the United States and against any employee of the Government whose act or omission gave rise to the claim by reason of the same subject matter.

Thus, 28 U.S.C. § 2672 and 39 C.F.R. § 912.14 set forth the grounds and conditions by which the United States has waived its sovereign immunity.

## A.  Plaintiff's Failure to Assert Personal Injuries in the SF-95

Here, the Plaintiff's SF-95 claimed property damage only.  Specifically, in box 12a, which asks for the amount of property damage claimed, Carlos Contreras wrote, "6,872.59"; in box 12b, which asks for the amount of personal injury money being claimed, Carlos Contreras wrote, "none"; in box 12c, which asks for the amount of wrongful death money being claimed, Carlos

Contreras wrote, "none"; and in box 12d, which asks for the total amount of money being claimed, Carlos Contreras wrote, "6,872.59." (SMF No. 16).

Courts have refused to permit a plaintiff to assert a claim for personal injuries where the plaintiff failed to identify a sum certain or claim personal injuries on the SF-95 finding such claims barred when the plaintiff accepted a settlement for property damage. *See, e.g., Circelli v. U.S.*, No. 17-5269, 2018 WL 3000334 (D.N.J. June 15, 2018) (granting motion to dismiss pursuant to Fed. R. Civ. P. 12(h) for lack of subject matter jurisdiction on plaintiff's claim for personal injuries where plaintiff signed a SF-95 claiming property damage, for which he accepted a check as settlement of his claims, and indicated he was "still under treatment"); *Penn v. U.S.*, No. 4:10-1145, 2012 WL 3555302, at *4 (E.D. Ark. Aug. 16, 2012) (barring plaintiff's second claim for personal injuries after cashing initial SF-95 claim because "the language of . . . the SF-95 . . . objectively indicated that Plaintiff was or should have been aware that accepting the money for her property damage and failing to specify any personal damages would bar future claims.").

Here, not only did Plaintiff fail to assert a sum certain, Plaintiff's husband affirmatively wrote "none" in response to the question as to personal injuries being claimed. (SMF No. 16). Plaintiff's husband explained he did so because "we were in pain only and when we went to the hospital they gave us Tylenol for the pain and then after that we didn't have any injuries at that time, but then after that, we start having pains and all that". (ECF No. 44-1, Ex. A at 24). However, Courts have rejected arguments, like those made by the Plaintiff here, that they were still under treatment and/or were unaware of the nature of extent of their personal injuries and thus can assert a claim for personal injuries after having accepted a settlement payment. *See Circelli*, 2018 WL 3000334, at *2 ("[A] claimant's ongoing medical treatment does not exempt her from the jurisdictional obligation to present a claim for a sum certain to the appropriate agency as required

by 28 U.S.C. §§ 1346(b) and 2675(a) & (b), and 28 C.F.R. § 14.2(a).") (quoting *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 458 (3d Cir. 2010)). Further, as to Plaintiff's arguments that she was wholly unaware of any personal injuries she had suffered, the Third Circuit has explained,

> Requiring parties to submit a sum certain claim before all losses have accrued is unremarkable. Both settlements of claims and damages awards commonly contemplate costs that will accrue in the future. Every limitations period embodies the possibility that a complaint must be filed before the claimant's knowledge is complete. That possibility, however, affords no basis for disregarding the interest of finality embodied in a statute of limitation that a legislative body has chosen to enact.

*White-Squire*, 592 F.3d at 459 (citations and internal quotations omitted). For all these reasons, Plaintiff's claim that her personal injury claim should be barred because she had not yet manifested any "significant symptoms of injury" lacks merit. (ECF No. 44 at 4–5). The Court finds that the SF-95 submitted by Plaintiff along with the acceptance of the settlement check bars her claim for personal injuries in this case. *See Schwarder v. U.S.*, 974 F.2d 1118, 1124 (9th Cir. 1992) ("We conclude, as a matter of federal law, that an administrative settlement reached pursuant to section 2672 bars further claims by the settling party . . . ").

## B. Plaintiff's Claim that the Settlement Agreement and Release Should Not Be Enforced

Plaintiff argues, however, that the release should not be enforced because her husband signed the SF-95, not her; because of her limited comprehension of English; and because neither he or she understood or intended that the acceptance of the payment would bar any further claim for personal injuries. (ECF No. 44 at 4–5).

This Circuit has applied state law to determine the validity and scope of a release under § 2672. *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 77 (3d Cir. 1996). Thus, the construction and enforcement of settlement agreements is governed by state law. *Muhammad v. Dep't of Corr.*, No. 05-4999, 2012 WL 1393052, at *2 (D.N.J. Apr. 20, 2012); *Excelsior Ins. Co. v. Pennsbury Pain*

*Ctr.*, 975 F. Supp. 342, 348–49 (D.N.J. 1996). Under New Jersey state law, a "settlement between parties to a lawsuit is a contract like any other contract." *Peskin v. Peskin*, 638 A.2d 849, 856 (N.J. Super. Ct. App. Div. 1994); *Borough of Haldeon v. Borough of N. Haledon*, 817 A.2d 965, 975 (N.J. Super. Ct. App. Div. 2003). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into, and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 462 A.2d 186, 190 (N.J. Super. Ct. App. Div. 1983) (internal quotations omitted). Further, in New Jersey, there is a strong public policy favoring settlements. *See Nolan v. Lee Ho,* 577 A.2d 143, 146 (N.J. 1990); *see also Domanske v. Rapid-American Corp.*, 749 A.2d 399, 402–403 (N.J. Super. Ct. App. Div. 2000). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dept. of Public Advocate v. N.J. Bd. Of Public Utility*, 503 A.2d 331, 334 (N.J. Super. Ct. App. Div. 1985).

Nevertheless, courts should not enforce a "settlement . . . where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." *Bistricer v. Bistricer*, 555 A.2d 45, 47 (N.J. Ch. Div. 1987) (citations and internal quotations omitted). Moreover, where the terms and conditions of a settlement agreement are clear and unambiguous, the non-breaching party is entitled to enforcement. *Arboretum Gardens & Landscaping, LLC v. Glazer*, No. A-5530-08T3, 2010 WL 4117104, at *2 (N.J. Super. Ct. App. Div. July 28, 2010).

Here, there is no evidence of fraud by the USPS. At best Plaintiff alleges unilateral mistake by her and husband in regards to the meaning of the SF-95. As the New Jersey Appellate Division explained in *Tri-Tech Env't Eng'g, Inc. v. Nutley Bd. of Educ.*, No. A-4601-08T2, 2010 WL

3448040, at *6 (N.J. Super. Ct. App. Div. Aug. 30, 2010),

> Equity may allow rescission in light of a unilateral mistake in a contract under certain circumstances. A party seeking rescission must show special circumstances justifying a departure from the generally controlling principle that parties are bound by the contracts they make for themselves.
>
> The essential conditions to relief by way of rescission for mistake are (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.

(internal citations and quotations omitted). Plaintiff simply cannot meet that standard in this case, particularly as to the third and fourth factors. If Plaintiff or her husband had any doubt as to the meaning of the SF-95 or the significance of the letter and settlement check, they should have exercised reasonable care to ensure they understood before submitting the SF-95 and cashing the check. Further, for obvious reasons, the USPS would be seriously prejudiced by having to litigate a claim more than two years after it believed it had reached a full and final settlement. The Court also does not find that enforcing the contract would be unconscionable. As another Court in this Circuit has explained,

> The evidence in this case at most proves the possibility that a layman misunderstood the legal ramifications of accepting a settlement award even though the ramifications were clearly delineated in the standard claim form and in [the USPS] letter, or, perhaps, that the [Plaintiffs] understood the legal consequences but nevertheless did not "intend" to surrender the claims for pain and suffering and loss of consortium. In any event, the evidence falls considerably short of proving fraud, bad faith, or a willful effort to mislead or deceive on the part of [the USPS] and proof that the [Plaintiffs] perhaps misunderstood the legal implications of accepting the settlement award or proof of a lack of intent to relinquish the claims now being advanced is not enough to vitiate the release.

*Wright v. U.S.*, 427 F. Supp. 726, 729 (D. Del. 1977) (citation omitted); *see also, e.g., Adams v. United States*, No. 97-0706, 1999 WL 1059680, at *3–4 (W.D. Va. Mar. 3, 1999), *aff'd*, 201 F.3d

435 (4th Cir. 1999) (rejecting plaintiff's argument that he and his wife never intended to release personal injury claims as insufficient to invalidate release); *Murphree v. U.S.*, No. 10-4122, 2011 WL 1980371, at *7 (D. Kan. May 20, 2011) (personal injury suit barred where plaintiff cashed USPS settlement check for property damage, even though she did not appreciate it was waiving her personal injury claim).

Further, while the Court is sympathetic to the limited comprehension of English of Plaintiff, the form was available in both English and Spanish. Plaintiff's husband completed the Spanish form and she provides no reason for why she did not complete the Spanish form on her own. Further, her husband obviously understood the form well enough to answer "none" in the box asking for the amount of personal injuries sought and signed the Certification that it constituted the full claim being made. (SMF No. 16, 19). Plaintiff has cited no case law that would place the burden of reading and understanding the form upon the USPS rather than her and/or her husband.

Finally, while Plaintiff claims the fact that her husband executed the release and not her is sufficient to create a factual issue and/or a rejection of the enforcement of the agreement, the undisputed facts demonstrate that she had delegated the actual authority to her husband to act as her agent for purposes of making a claim. *See, e.g., U.S. Bank Nat'l Ass'n as Tr. for Residential Funding Mortg. Sec., I Inc., Mortg. Pass-Through Certificates, Series 2007-S1 v. Gallagher*, No. A-5689-16T1, 2019 WL 3282760, at *11 (N.J. Super. Ct. App. Div. July 22, 2019) ("'it is the general principle that the wife is the agent of her husband only by virtue of his authority expressly conferred or reasonably to be implied from the circumstances.'") (quoting *Smedley v. Sweeten*, 77 A.2d 489, 490 (N.J Super. Ct. App. Div. 1950)); *Jennings v. Reed*, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005) (upholding settlement agreement where plaintiff "failed to prove [her husband] lacked either actual or apparent authority to consent to a settlement on his wife's

14

behalf."). Here, Plaintiff testified that due to her limited English skills that her husband "was the one dealing with everything. It was the Postal Service in English, so he took charge of the paperwork and documents." (ECF No. 40-2, Ex. B at 17). She was aware that her husband was filling out a document. (ECF No. 40-2, Ex. B at 17; ECF No. 40-2 Ex. C at 25–26). While she denied reviewing the letter from the USPS accompanying the check, she again testified "[m]y husband would be in charge of reading the documents received in English." (ECF No. 40-2, Ex. B at 19). As such, Plaintiff delegated the responsibility for making the claim and completing the forms to her husband and she is therefore bound by his acts. *Heckel v. Burtchaell*, 72 A.2d 794, 795 (N.J. Super. Ct. App. Div. 1950) (finding both spouses were bound by an agreement signed by wife where the "husband had authorized his wife to take care of these matters for him"); *see also Borden v. Sinskey*, 530 F.2d 478, 483 (3d Cir. 1976) (finding that wife who placed all of her business affairs in the hands of her husband authorized him to act as her general business agent).

## V.   **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment and/or to Dismiss for Lack of Jurisdiction under Fed. R. Civ. P. 12(h). (ECF No. 40). An appropriate Order accompanies this Opinion.

   */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**